# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE:

JOY R. DENBY-PETERSON,

      Appellant

Civ. No.: 1:17-cv-09985-NLH

---

## APPELLANT'S OPENING BRIEF ON APPEAL

**McDOWELL LAW, PC**
46 West Main Street
Maple Shade, NJ 08052
(856) 482-5544
*Attorneys for Debtor Joy R. Denby-Peterson*

*On the Brief:*
Ellen M. McDowell, Esquire
Daniel L. Reingaum, Esquire
Rachel B. Brekke, Esquire

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. ..................................................................... ii

STATEMENT OF APPELLATE JURISDICTION..................................... 1

STATEMENT OF THE ISSUES PRESENTED............................................1

STATEMENT OF THE STANDARD OF APPELLATE REVIEW.............................................2

STATEMENT OF THE CASE.............................................................2

SUMMARY OF ARGUMENT.............................................................5

ARGUMENT. ...................................................................... 6

    A.    The Bankruptcy Court Erred When It Adopted The Minority Position Concerning Whether Retaining Possession of The Estate Is "Exercising Control" Over Same in Violation of The Automatic Stay ..................................................... 6

    B.    Even Under The Minority View, NU2U Auto World Violated The Automatic Stay When It Manufactured Documents Post-Petition And Committed Perjury....8

    C.    The Bankruptcy Court Erred When It Held That The Debtor's True Interest In The Vehicle Was Unknown As Of The Date Of The Bankruptcy Filing................9

    D.    Public Policy Considerations Do Not Favor Shifting The Burden To Reclaim Property Of The Estate To The Debtor................................................... 11

    E.    The Bankruptcy Court's Conclusion That There Was No Proof At Trial That The Vehicle Was Insured Was Clearly Erroneous........................................................12

CONCLUSION..................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

In re Abrams, 127 B.R. 239 (B.A.P. 9th Cir. 1991)...............................................................12, 13

Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm., 321 B.R. 147 (D.N.J. 2005).......1

California Employment Dev. Dept. v. Taxel, 98 F.3d 1147 (9th Cir. 1996)...................................6

In re Chesnut, 422 F.3d 298, 303-04 (5th Cir. 2005)...................................................................10

In re Cowen, 849 F.3d 943 (10th Cir. 2017)......................................................................... 7, 8, 9

In re Del Mission Ltd., 98 F.3d 1147, 1151 (9th Cir. 1996)..........................................................12

In re Endeavour Highrise, L.P., 432 B.R. 583, 630 (Bankr. S.D. Tex 2010)................................10

In re Franco, 574 B.R. 730 (Bankr. D.N.M. 2017).......................................................................10

In re Levenstein , 371 B.R. 45 (Bankr.S.D.N.Y.2007)..................................................................10

In re Sussex SkyDive, LLC, 2016 Bankr. LEXIS 1862 (Bankr. D.N.J. Apr. 27. 2016)................7

In re Stamper, 2008 WL  724237 (Bankr. D. N.J. Mar. 17 2008)...................................................7

In re Sharon, 234 B.R. 676 (B.A.P. 6th Cir. 1999)...................................................................8, 13

In re Professional Insurance Management, 285 F.3d 268, 282-283 (3d Cir. 2002).......................2

In re Taub, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010), aff'd, No. 08 BK 44210 ESS, 2011
WL 1322390 (E.D.N.Y. Mar. 31, 2011)....................................................................................10

In re Knaus, 889 F.2d 773 (8th Cir. 1989).....................................................................6, 11, 12, 13

In re Villarreal, No. 06-70358, 2007 WL 470507, at *2 (Bankr. S.D. Tex. Feb.8, 2007).......10, 11

Thompson v. Gen. Motors Acceptance Corp., LLC, 566 F.3d 699 (7th Cir. 2009)........6, 7, 11, 13

U.S. v. Inslaw, 932 F.2d 1467 (D.C. Cir. 1991)..............................................................................7

In re Skinner, 90 B.R. 470 (D.Utah 1988), aff'd, 917 F.2d 444 (10th Cir.1990)..........................11

In re Weber, 719 F.3d 72 (2d Cir. 2013)..............................................................................6, 7, 11, 12

In re Yates, 332 B.R. 1, 7 (B.A.P. 10th Cir. 2005), abrogated by In re Cowen,

849 F. 3d 943 (10th Cir. 2017)..................................................................................................13

## **Statutes**

N.J.S.A. 12A:9-101......................................................................................................................

N.J.S.A. 12A:9-623......................................................................................................................

N.J.S.A. 12A:9-611......................................................................................................................

N.J.S.A. 12A:9-602......................................................................................................................

N.J.S.A. 12A:9-101(24) ..............................................................................................................

N.J.S.A. 12A:9-624(c) .................................................................................................................

N.J.S.A. 12A:9-623(c) .................................................................................................................

11 U.S.C. § 362...............................................................................................1, 4, 5, 6, 7, 8, 14

11 U.S.C. § 363...........................................................................................................................5

11 U.S.C. § 364.........................................................................................................................14

11 U.S.C. § 542..................................................................................................................5, 6, 14

11 U.S.C. § 1303..........................................................................................................................5

28 U.S.C. § 158............................................................................................................................1

## **Other Sources**

PL 98 Stat 353, July 10, 1984.....................................................................................................7

Webster's New World College Dictionary (4th ed. 2002)...........................................................7

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 158(a).  See Baron & Budd, P.C. v. Unsec. Asbestos Claimants Comm., 321 B.R. 147, 155 (D.N.J. 2005).

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether the Bankruptcy Court committed an error of law or an abuse of its discretion in holding there was no violation of the automatic stay and that no sanction should be imposed under 11 U.S.C. § 362 even though the Court correctly found: a) the Debtor had an equitable interest in her automobile, b) the Debtor had the right to request that the Creditor return her automobile, c) the Debtor did request that the Creditor return her automobile, d) the Creditor retained the Debtor's automobile for more than six months after the request; and e) the Creditor had no legal basis for retaining the Debtor's automobile.

2.     Whether the Bankruptcy Court was clearly erroneous in finding that the "…Debtor's true interest in the Vehicle was unknown."

     a.     Assuming *arguendo* the Debtor's true interest was correctly found to be unknown; whether the Bankruptcy Court committed an error of law or abuse of its discretion in holding that the Creditor's retention of possession of the Debtor's automobile while the dispute over its true interest was resolved was not a violation of the stay and that no sanction should be imposed under 11 U.S.C. § 362.

3.     Whether the Bankruptcy Court was clearly erroneous in finding that there was no proof at trial that the Debtor had insurance at the time she filed her bankruptcy petition.

1

## STATEMENT OF THE STANDARD OF APPELLATE REVIEW

The standard of review applicable to this appeal is threefold: the Court must "review the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof." See In re Professional Insurance Management, 285 F.3d 268, 282-283 (3d Cir. 2002).

## STATEMENT OF THE CASE

### A.    NATURE OF THE CASE

This appeal addresses the important issue of whether the Bankruptcy Code permits a creditor to refuse to turn over property belonging to a Debtor in bankruptcy while it challenges the ownership of that property.  The Bankruptcy Court's determination that the creditor in this case was permitted to do so and did not violate the automatic stay when it failed to return the Debtor's vehicle to her after she filed her bankruptcy petition was clearly erroneous.

### B.    STATEMENT OF THE FACTS

Debtor Joy Denby-Peterson is a licensed practical nurse.  (8/16/2017 Hearing page 15, Appendix A-    ).  Her job requires her to visit different facilities where she attends to patients. She requires a vehicle to perform her job duties. (8/16/2017 Hearing page 15, Appendix A-    )

Ms. Denby-Peterson purchased a 2008 Chevrolet Corvette (the "Vehicle") from Pine Valley Motors on July 21, 2016.  (8/16/2017 Hearing page 16, Appendix A-    ). She entered into a Retail Installment Contract that day (assigned by Pine Valley Motors to Nu2u Auto World the same day), which required her to make a down payment of $3,000 and installments of $200 per week thereafter for 212 weeks to pay the balance due on the vehicle.  (Retail Installment Contract, Appendix A-    ). The  Retail Installment Contract also required Ms. Denby-Peterson to make a "deferred down payment" of $2,491 on or before August 11, 2016, which would pay

2

for the sales tax and tags for the Vehicle.  Id.  The Retail Installment Contract provided that if Ms. Denby-Peterson did not pay the deferred down payment by August 11, 2016, any future payments made by her would be applied to the deferred down payment.  Id..

Ms. Denby-Peterson made the initial $3,000 down payment (8/16/2017 Hearing page 17, Appendix A-   ), but did not pay the deferred down payment by the deadline of August 11, 2016. (Transaction History, Appendix A-    )  She continued to make payments thereafter, however Nu2u failed to apply the subsequent payments to the deferred down payment obligation in violation of the contract.  Id.  On March 12, 2017, after Ms. Denby-Peterson fell behind in her weekly payments, Nu2u Auto World repossessed the Vehicle.  (8/16/2017 Hearing page 20-21, Appendix A-   ).

After the repossession, Nu2u produced a document that it claimed had been signed by Ms. Denby-Peterson on February 22, 2017, in which she allegedly waived her right to redeem the Vehicle (the "Waiver Document").  (Creditor Certification in Opposition to Debtor's Motion, Appendix A-    ). Nu2u claimed that Ms. Denby-Peterson signed the Waiver Document when she obtained her personal property from the Vehicle and turned over the key to Nu2u. (8/17/2017 Hearing page 34, 129-131, Appendix A-    ). Ms. Denby-Peterson denied having signed the Waiver Document on February 22, 2017 and likewise denied ever retrieving her personal property or surrendering her key to the Vehicle to Nu2u.  (8/16/2017 Hearing page 29, 34, 63, 65, Appendix A-__).

Once the Vehicle was repossessed, Ms. Denby-Peterson lost work since she had no means of transportation to attend to her patients.  (8/16/2017 Hearing page 64, Appendix A-    ).

C.     COURSE OF PROCEEDINGS AND DISPOSITION IN BANKRUPTCY COURT.

On March 21, 2017, Ms. Denby-Peterson filed a Chapter 13 bankruptcy petition. Immediately thereafter her attorneys notified Nu2u Auto World of the bankruptcy filing and demanded that the Vehicle be returned to Ms. Denby-Peterson.  Nu2u Auto World failed to return possession of the Vehicle to Ms. Denby-Peterson, and she accordingly filed a Motion seeking an order compelling Nu2u to turn over the Vehicle.

The Motion for Turnover included a request for sanctions for Nu2u's violation of the automatic stay as provided in 11 U.S.C. § 362(k).  (Appendix A-  )

In Nu2u's opposition to the Motion for Turnover, it admitted that Ms. Denby-Peterson had purchased the Vehicle. Its refusal to turn over the vehicle was based on its assertion that Ms. Denby-Peterson "surrendered all rights to the vehicle" when she allegedly signed the Waiver Document on February 22, 2017.  (Certification in Opposition, Appendix A-    )

On May 12, 2017, Nu2u Auto World filed a Proof of Claim in which it asserted a security interest in the Debtor's property, which it identified as a "motor vehicle."  (Appendix A-__).

The Bankruptcy Court held a plenary hearing on the Motion for Turnover on August 16 and 17, 2017.  After the hearing was concluded, both parties filed post-hearing memoranda.  The Bankruptcy Court issued an Order and Opinion on October 20, 2017 holding, inter alia, that the Debtor was the lawful owner of the Vehicle and that the Waiver Document was invalid under New Jersey law.  Accordingly, the Court ordered Nu2u Auto World to return possession of the Vehicle to Ms. Denby-Peterson.  The Bankruptcy Court held, however, that Nu2u was not liable for sanctions for violation of the automatic stay during the time it had failed to turn the Vehicle over as Ms. Denby-Peterson's interest in the Vehicle was "unknown" until it decided that she

was the lawful owner.

Ms. Denby-Peterson filed a timely notice of appeal.

## SUMMARY OF ARGUMENT

The Bankruptcy Court erred when it ruled that Nu2u Auto World was not liable for sanctions for violating the automatic stay by refusing to return possession of the Vehicle to Ms. Denby-Peterson after it was notified of her bankruptcy filing.

11 U.S.C. § 542(a) requires any entity in possession of property "that the trustee may use, sell, or lease under section 363 of this title" to deliver it to the trustee.[1]

Additionally, 11 U.S.C. § 362(a)(3) operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" (emphasis added).

11 U.S.C. § 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." (emphasis added).

There was never any credible argument that the Vehicle was not property of Ms. Denby-Peterson's bankruptcy estate, and accordingly Nu2u Auto World improperly exercised control over the Vehicle when it failed to turn over possession of it after it learned that she filed her bankruptcy case.

Furthermore, the Bankruptcy Court committed clear error when it ruled that there was no evidence presented that the Debtor maintained insurance on the Vehicle as of the date of her bankruptcy filing.

For these reasons, this matter must be remanded to the Bankruptcy Court with

---

[1] In Chapter 13 cases, the Debtor acts as the trustee for the purposes of Section 363(b), 363(d), 363(e), 363(f) and 363 (l) of the Bankruptcy Code.  11 U.S.C. § 1303.

5

instructions to determine and award sanctions to Ms. Denby-Peterson including damages for the loss of the use of the Vehicle and costs and attorneys' fees.

## ARGUMENT

**A.     THE BANKRUPTCY COURT ERRED WHEN IT ADOPTED THE MINORITY POSITION CONCERNING WHETHER RETAINING POSSESSION OF PROPERTY OF THE ESTATE IS "EXERCISING CONTROL" OVER SAME IN VIOLATION OF THE AUTOMATIC STAY**

The Bankruptcy Court correctly held that the Vehicle was property of Ms. Denby-Peterson's bankruptcy estate, as Nu2u Auto World's basis for claiming ownership of the Vehicle, the Waiver Document purportedly signed by Ms. Denby-Peterson, was (a) on its face insufficient to prove that she surrendered her interest in the Vehicle; and (b) in any event unenforceable as a matter of law.

The Bankruptcy Court erred, however, when it held that Nu2u Auto World's failure and refusal to turn over the Vehicle to Ms. Denby-Peterson was not a violation of the automatic stay and did not give rise to sanctions under Section 362(k) of the Bankruptcy Code.

There is a split among the circuits as to whether a creditor violates the stay when it fails to turn over property without committing some affirmative act in addition to simply retaining possession of estate property.  Four circuit courts of appeal have held that Section 542(a) of the Bankruptcy Code requires immediate turnover of property that the Debtor can use and that failure to do so violates Section 362(a)(3) of the Bankruptcy Code.  In re Weber, 719 F.3d 72 (2d Cir. 2013); Thompson v. Gen. Motors Acceptance Corp., LLC, 566 F.3d 699 (7th Cir. 2009); California Employment Dev. Dept. v. Taxel, 98 F.3d 1147 (9th Cir. 1996); In re Knaus, 889 F.2d 773 (8th Cir. 1989).

Just two circuit courts have held that the creditor does not violate the stay if it merely maintains the status quo pending an order of the Court.  In re Cowen, 849 F.3d 943 (10th Cir.

2017); U.S. v. Inslaw, 932 F.2d 1467 (D.C. Cir. 1991).

New Jersey courts have uniformly followed the majority rule, holding that creditors who fail to turn over property of the Debtor's estate upon the filing of a bankruptcy petition violate the automatic stay. See, e.g., In re Sussex SkyDive, LLC, 2016 Bankr. LEXIS 1862 (Bankr. D.N.J. Apr. 27, 2016); In re Stamper, 2008 WL 724237 (Bankr. D. N.J. Mar. 17, 2008).

As stated by the Court in In re Weber, supra, "the majority rule adheres more faithfully to the text of the Bankruptcy Code." 719 F.3d 72 at 81. This conclusion is rooted in the language of Section 362(a), which prohibits any act to "exercise control over property of the estate."

A commonsense interpretation of the automatic stay provision contained in Section 362(a)(3) necessarily results in a finding that a creditor who fails to turn over property exercises control over that property. Id. at 79 ("(w)e need only consult an ordinary dictionary to confirm that a typical definition of 'control' is' '(t)o exercise authority over; direct; command.'" (citing Webster's New World College Dictionary (4th ed. 2002)).

This plain language reading of Section 362 is bolstered by the 1984 amendments to the Bankruptcy Code, which broadened the "already sweeping" provisions of the automatic stay "even further" to prohibit expressly not only acts to obtain possession of property of the estate, but also "any act . . . to exercise control over the property of the estate." PL. 98 Stat 353, 371; In re Weber, supra, at 80; see also Thompson, supra, at 702 ("the mere fact that Congress expanded the provision to prohibit conduct above and beyond obtaining possession of an asset suggests that it intended to include conduct by creditors who seized property pre-petition.")

The majority view derives further support for its position from the underlying purpose of the Bankruptcy Code. Courts have recognized that "(w)ithholding possession of property of a bankruptcy estate is the essence of 'exercising control' over possession" because it prevents the

debtor from achieving beneficial use of the estate's property.  Id., quoting In re Sharon, 234 B.R. 676, 682 (B.A.P. 6th Cir. 1999).

Thus, the great weight of authorities considering this issue as well as the legislative history, a common sense reading of the applicable provisions of the Bankruptcy Code and consideration of the purpose of the Bankruptcy Code itself all compel a finding that Nu2u Auto World illegally retained possession of the Vehicle after the bankruptcy filing.  As a result, this matter must be reversed and remanded for the award of appropriate sanctions.

**B.   EVEN UNDER THE MINORITY VIEW, NU2U AUTO WORLD VIOLATED THE AUTOMATIC STAY WHEN IT MANUFACTURED DOCUMENTS POST-PETITION AND COMMITTED PERJURY**

Even if this Court were to adopt the minority view, the facts of this case clearly establish that Nu2u violated the automatic stay and must suffer sanctions.

According to the minority position, retention of estate property does not violate the automatic stay in and of itself, but bad acts committed by a creditor after the bankruptcy filing to justify retaining debtors' property are acts that violate the automatic stay under 11 U.S.C. § 362(a)(3).   In re Cowen, supra, at 951 (creditor that manufactured documents after the bankruptcy filing, gave perjured testimony, and coached their witnesses on what to testify to during breaks in an effort to convince the Court that the Debtor's rights in his property had been terminated prebankruptcy committed post-petition acts to exercise control over the debtor's property in violation of the automatic stay).

In this case, Nu2u was guilty of conduct exactly like that described in Cowen.  First, Nu2u lied about when the Vehicle was repossessed.  Specifically, Kenneth Cohen signed a certification that the Vehicle was picked up on February 19, 2017 (Creditor Opposition, Appendix A-___) , and Anthony Pinto testified that it was repossessed on February 19, 2017

(8/16/2017 Hearing page 128, Appendix A-    ), when it was actually taken on March 12, 2017 (8/16/17 Hearing page 20-21, Appendix A-____.).[2]   That the vehicle was repossessed on March 12, 2017 was established not only by the credible and detailed testimony of Ms. Denby-Peterson (8/16/2017 Hearing page 20-21, Appendix A-___) but also by the testimony of the police dispatcher (8/16/2017 Hearing page 100-105, Vineland Police Call Detail Report, Appendix A-___) and Ms. Denby-Peterson's college professor.  (8/16/2017 Hearing page 90-92, Professor Thai Letter, Appendix A-___.)

Additionally, Nu2u's principal, Anthony Pinto, committed perjury when, according to the Bankruptcy Court, he "prevaricated" on the witness stand in his testimony asserting that Ms. Denby-Peterson signed the Waiver Document on February 22, 2017.  (Opinion at 7, Appendix A-    ).  The Bankruptcy Court also found that Mr. Pinto testified "inconsistently" about whether Nu2u had returned the personal property in the Vehicle at the time it was repossessed to Ms. Denby-Peterson.  Id.   Moreover, the Bankruptcy Court stated that it "can believe that the Creditors would act vengefully toward the Debtor" and withhold her personal property from her even after they were ordered to turn it over.  (Opinion at 16, Appendix A-___ ).

The Bankruptcy Court also found that, contrary to Nu2u's principals' testimony, there was "no credible evidence" to support Nu2u's position that they returned Ms. Denby-Peterson's personal property to her, and that those individuals "completely lack[ed] credibility" on that point. Id.

---

[2] The Bankruptcy Court stated that it thought the date that the Vehicle was repossessed was irrelevant (Opinion at page 3, fn 2, Appendix A- ____), but it was not irrelevant since Kenneth Cohen believed that Nu2u could sell the Vehicle 30 days after it was repossessed.  (8/17/2017 Hearing Transcript at 36, Appendix A-  ).  This misunderstanding of the law by Mr. Cohen gave him reason to "backdate" the repossession to February 19, 2017, since that date was 30 days before the bankruptcy filing of March 21, 2017.

Finally, the Bankruptcy Court noted that Nu2u showed "a lack of candor to the court and the Debtor" when it allowed the Debtor to waste time and money on a trip to their facility to recover her personal property when they subsequently took the position that they were not in possession of it. (Opinion at 6, fn 7, Appendix A-___ ).

This litany of manufactured documents and perjured testimony by Nu2u constitutes exactly the type of "acts" that the Cowen, court held are violations of the automatic stay which would expose a creditor to sanctions. Thus, even under the minority view, Nu2u violated the automatic stay and must be sanctioned.

### C.   THE BANKRUPTCY COURT ERRED WHEN IT HELD THAT THE DEBTOR'S  TRUE INTEREST IN THE VEHICLE WAS UNKNOWN AS OF THE DATE OF THE BANKRUPTCY FILING

#### 1.   There was never a legitimate dispute as to ownership

In its opposition to Debtor's Motion for Turnover filed on April 3, 2017, just twenty-two (22) days after the bankruptcy case was filed, Nu2u Auto World certified that its sole claim concerning the ownership of the Vehicle was based on the Waiver Document, which, it posited, constituted a "voluntary surrender" of the Vehicle. (Creditor Opposition, Appendix A-___).

Moreover, on May 12, 2017, sixty-one (61) days after the bankruptcy petition was filed, Nu2u filed a Proof of Claim asserting a secured claim against the Debtor's property, identified as a "motor vehicle," further cementing its admission that the Vehicle was property of Ms. Denby-Peterson's bankruptcy estate. (Proof of Claim, Appendix A-___).

By its opposition to the Turnover Motion (admitting that the Debtor purchased the Vehicle and arguing that the Waiver Document was its only proof that she had no right to the Vehicle) and its Proof of Claim (admitting that the Vehicle was property of the Debtor's bankruptcy estate), Nu2u effectively eviscerated its own argument that Ms. Denby-Peterson's

ownership of the Vehicle was in question, eliminating any justification for retaining possession thereof.

Specifically, Nu2u's argument that the Waiver Document constituted a "voluntary surrender" of the Vehicle was facially defective. First, as the Bankruptcy Court recognized, it was "obvious" that the Waiver did not effect a surrender of the Vehicle since the word "surrender" never appears in the Waiver. (Opinion at 11, Appendix A-   ).

Second, as set forth hereinafter, the Waiver Document was ineffective as a matter of law.

New Jersey has codified Article 9 of the Uniform Commercial Code at N.J.S.A. 12A:9-101 et. seq.  The UCC provides a debtor with certain rights and protections. This includes the right to be notified that a secured party intends to dispose (sell) their collateral. See N.J.S.A. 12A:9-611. It also includes the right to redeem the collateral. See N.J.S.A. 12A:9-623.

§12A:9-602 of the UCC generally prohibits the waiver of rights by debtors and obligations to secured parties. It acts to protect borrowers. It states that "except as otherwise provided in §12A:9-624, to the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in the following listed sections…  12A:9-610(b), 12A:9-611, 12A:9-631 and 12A:9-614," all of which deal with disposition of collateral.

§12A:9-624 is an exception to this general rule and provides limited instances where a debtor can waive certain rights.

§12A:9-624(a) provides that "[a] debtor or secondary obligor may waive the right to notification of disposition of collateral under §12A:9-611 only by an agreement to that effect entered into and authenticated after default."

§12A:9-624(c) provides that "[e]xcept in a consumer-goods transaction, a debtor or

11

secondary obligor may waive the right to redeem collateral under §12A:9-623 only by an agreement to that effect entered into and authenticated after default."

In other words, if the purchase of the vehicle was a consumer-goods transaction, then no waiver of the right to redeem can be effected.

§12A:9-101(24) defines "consumer-goods transaction" as a "consumer transaction in which: . . . an individual incurs an obligation primarily for personal, family, or household purposes; and a security interest in consumer goods secured the obligation."

In turn, "consumer transaction" is defined at §12A:9-101(26) as "a transaction in which (i) an individual incurs an obligation for personal, family, or household purposes, (ii) a security interest secures the obligation, and (iii) the collateral is held or acquired primarily for personal, family, or household purposes.  The term includes consumer-goods transactions."

Paragraph 3 of the Retail Installment Contract sets forth that the purchase of the Vehicle is for "personal, family, or household use."  The purchase of the vehicle was a consumer-goods transaction.  Therefore the Debtor could not waive her rights to redeem the vehicle.

§12A:9-623(c) provides that "[a] redemption may occur at any time before a secured party:

> (1) Has collected collateral under 12A:9-607;
>
> (2) has disposed of collateral or entered into a contract for its disposition under 12A:9-610; or
>
> (3) has accepted collateral in full or partial satisfaction of the obligation it secured under 12A:9-622.

None of these events is alleged to have occurred here.  As a result, the Waiver Document could not have affected Ms. Denby-Peterson's right to redeem the Vehicle, and Nu2u's argument

to the contrary was wrong as a matter of law.

Based on the foregoing, it is clear that there was never any legitimate dispute concerning the Debtor's interest in the Vehicle, and Nu2u's failure to turn it over to Ms. Denby-Peterson was improper and violated the automatic stay.

2. **Even if there was a bona fide dispute, Nu2u was required to turn over the Vehicle**

Assuming, arguendo, that there was a legitimate dispute as to the Debtor's ownership of the Vehicle (which was clearly not the case as explained above), Nu2u still violated the automatic stay by refusing to turn it over pending the resolution of same.

It is black letter law that the automatic stay applies to property whose ownership is the subject of a bona fide dispute. See In re Franco, 574 B.R. 730 (Bankr. D.N.M. 2017).

The court is not required to resolve a dispute concerning ownership before ruling that the stay is in place. Id. at 736 (citing In re Chesnut, 422 F.3d 298, 303-04 (5th Cir. 2005)); In re Endeavour Highrise, L.P., 432 B.R. 583, 630 (Bankr. S.D. Tex 2010)(the automatic stay applies even where "the debtor's claimed interest in property may turn out to be groundless."); In re Levenstein, 371 B.R. 45, 47 (Bankr. S.D.N.Y.2007); See In re Villarreal, No. 06-70358, 2007 WL 470507, at *2 (Bankr. S.D. Tex. Feb.8, 2007) (concluding that even "[w]hen property is only *arguably* property of the estate, the automatic stay applies") (emphasis in original); In re Taub, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010), aff'd, No. 08 BK 44210 ESS, 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011).

Thus, Nu2u had no legitimate claim that the Vehicle was not property of the bankruptcy estate and that it had a right to retain possession of it. But even if there was a bona fide dispute, Nu2u still was required to turn it over under well-settled law. Its failure to do so must result in the imposition of sanctions.

### D. PUBLIC POLICY CONSIDERATIONS DO NOT FAVOR SHIFTING THE BURDEN TO RECLAIM PROPERTY OF THE ESTATE TO THE DEBTOR

As set forth above, the Bankruptcy Code clearly requires any party in possession of property of the bankruptcy estate to turn it over upon the bankruptcy filing, and states that any party that fails to do so improperly exercises control over such property, resulting in sanctions for violation of the automatic stay.  This reading of the Bankruptcy Code, as adopted by the majority of Circuits deciding this issue, is consistent with the policy underlying all of title 11.

The primary purpose of the Bankruptcy Code is to provide a means for overburdened debtors to gain discharge of their financial obligations, and thereby a "fresh start."  Harris v. Viegelahn, 135 S. Ct. 1829, 1835, 191 L. Ed. 2d 783 (2015).

In a Chapter 13 case, it is especially important that a debtor retain possession of his/her property such that a fresh start is attainable:

> The primary goal of reorganization bankruptcy is to group *all* of the debtor's property together in his estate such that he may rehabilitate his credit and pay off his debts; this necessarily extends to all property, even property lawfully seized pre-petition. An asset actively used by a debtor serves a greater purpose to both the debtor and his creditors than an asset sitting idle on a creditor's lot.

Thompson, supra, at 702.

In this vein, the majority view emphasizes the underlying purpose of the automatic stay, which also advances the goal of alleviating the financial strains on the debtor. See, e.g., Knaus, supra at 775; see also In re Skinner, 90 B.R. 470 (D.Utah 1988), aff'd, 917 F.2d 444 (10th Cir.1990).

To effectuate the purpose of the automatic stay, the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor. In re

Abrams, 127 B.R. 239, 243 (B.A.P. 9th Cir. 1991); In re Del Mission Ltd., 98 F.3d 1147, 1151 (9th Cir. 1996).

The Weber court noted that in contrast to these well-settled precepts of bankruptcy law, the minority rule impermissibly places on the debtor the burden of taking action to pull together the bankruptcy estate and thereby "increase[s] the costs of administering the estate and decrease[s] the assets available to effect a successfully reorganization." Id. at 80. See also Knaus, supra, at 775 ("if persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court . . . to collect the estate for the benefit of creditors would be vastly reduced.").

These policy considerations become real life concerns when applied to the case before the Court: Debtor Joy-Denby Peterson, a licensed practical nurse who needs her car to work, was without the use of her car for nearly seven months during the pendency of this matter and could not work as a result. Moreover, she was required to incur significant attorneys' fees to compel the return of the Vehicle. Yet the Bankruptcy Court imposed no penalty on Nu2u Auto World for its conduct, meaning that Nu2u and other auto lenders in this district may now feel free to withhold debtors' vehicles with impunity, knowing that many debtors will not have the resources or the tenacity to seek judicial recourse.[3]  This is directly contrary to the purposes and policies of the Bankruptcy Code. For this additional reason, the Bankruptcy Court's order must be reversed.

---

[3] Interestingly, Kenneth Cohen testified that in other cases when Nu2u's customers filed bankruptcy petitions, all he had to do was present a copy of that customer's purported Waiver document, and "everybody says okay." (8/16/2017 Hearing page 37-38, Appendix A-    ). Since, as demonstrated above, Nu2u's "waivers" are ineffective to terminate a borrower's right to redeem, this shows that other borrowers have and will continue to "give up" fighting for their vehicles unless there are consequences for Nu2u's illegal behavior.

> **E.     THE BANKRUPTCY COURT'S CONCLUSION THAT THERE WAS NO PROOF AT TRIAL THAT THE VEHICLE WAS INSURED WAS CLEARLY ERRONEOUS**

The Bankruptcy Court held that Nu2u lacked adequate protection as required by Section 365 of the Bankruptcy Code because "there was no proof at trial that the Debtor had *any* insurance at the time of filing . . ."

Although it is true that a secured creditor may demand adequate protection from a debtor, a creditor may not avoid its obligation to turn over property of the debtor by demanding proof of adequate protection before it turns over the property.  See Thompson, supra, at 704 ("the right of possession is incident to the automatic stay," and  "(a) subjectively perceived lack of adequate protection is not an exception to the stay provision and does not defeat this right."  See also In re Yates, 332 B.R. 1, 7 (B.A.P. 10th Cir. 2005), abrogated by In re Cowen, 849 F. 3d 943 (10th Cir. 2017); In re Sharon, supra, at 685; In re Knaus, supra; In re Abrams, 127 B.R. 239.

Even if this Court were to find otherwise, however, and determine that Nu2u was not required to turn over the Vehicle unless Ms. Denby-Peterson proved that the Vehicle was properly insured, the Bankruptcy Court's finding that there was no proof of same was clearly erroneous.

In fact, Ms. Denby-Peterson testified at the hearing that she had insurance as of the date of the bankruptcy filing:

> Q:     All right.  Did you ever provide a document to your attorney
> indicating that you had paid for insurance for the car after March 21st,
> 2017?
>
> A:     My insurance was intact.  As a matter of fact, the insurance
> company, Your Honor, sent them the information from their own
> office via fax.

(8/16/2017 Hearing page 65, Appendix A-    ).

16

In sum, Nu2u Auto World was not permitted under applicable law to condition return of the Vehicle on proof of insurance.  Even it was, however, the evidence at trial proved that at the time of the bankruptcy filing such insurance was in place.  Since Nu2u Auto World was adequately protected by the insurance on the Vehicle maintained by the Debtor as of the date of the bankruptcy petition, there was no basis for Nu2u to refuse to turn over the Vehicle to Ms. Denby-Peterson under Sections 362, 364 and 542 of the Bankruptcy Code.

## <u>CONCLUSION</u>

As discussed above, Nu2u Auto World's failure to turn over the Vehicle to Debtor Joy Denby-Peterson upon her bankruptcy filing was an act to exercise control over property of her bankruptcy estate.  If that act was not sufficient to violate the stay, Nu2u's perjury and other efforts to prove that she had no right to the Vehicle were acts that require the imposition of sanctions.

There was never any legitimate dispute regarding Ms. Denby-Peterson's ownership of the Vehicle, and the Bankruptcy Court's finding that Nu2u did not violate the automatic stay, if upheld, would set a precedent that would be catastrophic for debtors in this district seeking to redeem property that has been garnished or repossessed.

Public policy is not served through permitting creditors to retain debtors' property indefinitely while advancing spurious ownership disputes that result in no adverse consequences once they are proven wrong.  Such an outcome would turn the bankruptcy process on its head and force debtors to bear the brunt of (a) the indefinite loss of use of their assets; and (b) the financial burden of proving the ownership of their own property in Court.

For these reasons, Debtor Joy Denby-Peterson respectfully requests that this Honorable Court reverse the Order holding that Nu2u Auto World was not liable for sanctions for violating

the automatic stay and remand this matter with direction to award appropriate sanctions.

Respectfully submitted,

Dated: January 5, 2018                */s/ Ellen M. McDowell*
                                      Ellen M. McDowell. Esquire
                                      Daniel L. Reinganum. Esquire
                                      Rachael B. Brekke, Esquire
                                      McDOWELL LAW, PC
                                      46 West Main Street
                                      Maple Shade, NJ 08052
                                      (856) 482-5544

                                      *Attorneys for Appellant Joy Denby-Peterson*