---

JOY DENBY-PETERSON,

        Appellant,

    v.

NU2U AUTO WORLD and PINE
VALLEY MOTORS,

        Appellees.

Civil No. 17-9985 (NLH)

**OPINION**

---

**APPEARANCES**:

ELLEN M. MCDOWELL
MCDOWELL LAW, PC
46 WEST MAIN ST.
MAPLE SHADE, NJ 08052

    *Attorney for Appellant Joy Denby-Peterson*

DAVID A. SNYDER
LAW OFFICE OF DAVID A. SNYDER
11 WEST ORMOND AVENUE
SUITE 150 C
CHERRY HILL, NJ 08002

    *Attorney for Appellees Nu2u Auto World and Pine Valley*
*Motors*

**HILLMAN**, District Judge

    This appeal arises from the Bankruptcy Court's order

denying Appellant Joy Denby-Peterson's ("Appellant" or "Denby-

Peterson") sanctions request, concerning an alleged violation of

an automatic stay by Appellees Nu2u Auto World ("Nu2u") and Pine

Valley Motors ("PVM" and, collectively, "Appellees").  For the

reasons expressed below, the decision of the Bankruptcy Court

will be affirmed, and this appeal will be dismissed.

**BACKGROUND**

This Court takes its brief recitation of facts from the briefs and notes any factual disputes where applicable.  On July 21, 2016, Denby-Peterson purchased a 2008 Chevrolet Corvette (the "Vehicle") from PVM.  On the same day, Denby-Peterson entered into a Retail Installment Contract (the "Contract") which required her to make certain down payments and installment payments.  This was assigned to Nu2u.

The contract required (1) an initial $3,000 down payment, (2) installment payments of $200 per week for 212 weeks, and (3) a deferred $2,491 down payment on or before August 11, 2016. Under the Contract, if Denby-Peterson did not make the deferred down payment, any excess payments would be applied to it. Denby-Peterson paid the initial down payment, did not pay the deferred down payment, and began to miss installment payments. Appellees did not apply her installment payments to the deferred down payments.  Regardless, Nu2u (through a third-party) repossessed the Vehicle.[1]  After the repossession of the Vehicle,

---

[1] The date of repossession was disputed strenuously at the hearing mentioned _infra_, as it was central to the underlying dispute of the parties concerning the signing of a waiver and whether turnover was warranted.  Except for chronological purposes, the date of repossession is not particularly important to this dispute.  For the sake of completeness, Appellees assert February 19, 2017 was the date of repossession and Appellant asserts it was on March 12, 2017.  Both dates are before the

Denby-Peterson lost work because she could not travel to the patients she treated as a licensed practical nurse.

On March 21, 2017, Denby-Peterson filed the underlying Chapter 13 bankruptcy petition.  Denby-Peterson, through her attorneys, notified Nu2u of the bankruptcy proceeding and demanded Nu2u return the vehicle to Denby-Peterson.  Nu2u did not return the vehicle and Denby-Peterson filed a Motion for Turnover (the "Motion") on March 24, 2017.  The Motion included a request for sanctions for Nu2u's alleged violation of the automatic stay under 11 U.S.C. § 362(k).

Nu2u resisted the Motion on April 3, 2017 by asserting that although Denby-Peterson had purchased the Vehicle she had surrendered all rights in the Vehicle when she signed a document on February 22, 2017 allegedly waiving her right to redeem the Vehicle (the "Waiver Document").  Nu2u alleged this document was signed when Denby-Peterson visited Nu2u to retrieve her personal property from the Vehicle after repossession.[2]  Additionally, Nu2u filed a Proof of Claim, asserting a security interest in the Vehicle.

On August 16 and 17, 2017, the United States Bankruptcy

---

filing of the underlying bankruptcy petition.

[2] Denby-Peterson stated in the underlying proceeding that she never visited Nu2u and never received her personal property on that date.

Court for the District of New Jersey (the "Bankruptcy Court")
held a plenary hearing on the Motion. Post-hearing memoranda
were filed. On October 20, 2017, the Bankruptcy Court issued an
Order and Opinion.

Of relevance, the Opinion held that Denby-Peterson was the
lawful owner of the Vehicle, the Waiver Document was invalid
under New Jersey law, and Nu2u was not liable for sanctions for
retaining possession of the Vehicle after the automatic stay was
instituted. The contents of the hearing and the Bankruptcy
Court Opinion and Order will be discussed in further detail
infra where relevant.

Denby-Peterson filed a timely notice of appeal on October
30, 2017. The issues presented infra were fully briefed by both
parties. On May 4, 2018, the Bankruptcy Court dismissed the
underlying bankruptcy case. On October 3, 2018, this Court
issued an Order to Show Cause why this appeal was not mooted by
the dismissal of the underlying case. Denby-Peterson timely
responded to the Order to Show Cause on October 13, 2018. This
appeal is ripe for adjudication.

**DISCUSSION**

**A.    Subject Matter Jurisdiction**

This Court has jurisdiction over the appeal from the
Bankruptcy Court's October 20, 2017 order pursuant to 28 U.S.C.
§ 158(a), which provides in relevant part: "The district courts

4

of the United States shall have jurisdiction to hear appeals
from final judgments, orders and decrees . . . of bankruptcy
judges entered in cases and proceedings referred to the
bankruptcy judges under section 157 of this title.  An appeal
under this subsection shall be taken only to the district court
for the judicial district in which the bankruptcy judge is
serving."

### B.    Mootness

This Court, <u>sua sponte</u>, ordered Appellant to show cause why
this appeal was not mooted by the May 4, 2018 dismissal of the
underlying bankruptcy case.  Appellant responded to this Order
to Show Cause within the allotted time.  This Court is satisfied
with Appellant's response that this matter is not moot.

In coming to this conclusion, this Court considered the
following.  "In the bankruptcy context, the determination of
whether a case becomes moot on the dismissal of the bankruptcy
hinges on the question of how closely the issue in the case is
connected to the underlying bankruptcy."  <u>Tellewoyan v. Wells
Fargo Home Mortg.</u>, No. 05-4653 (FLW), 2006 U.S. Dist. LEXIS
55558, at *3 (D.N.J. Aug. 10, 2006) (quoting <u>In re Pattullo</u>, 271
F.3d 898, 901 (9th Cir. 2001)).  The appeal concerns issues
related to an alleged violation of the automatic stay.  This
question is an ancillary issue not closely intertwined with the
underlying bankruptcy.

Circuit law agrees with this assessment.  In cases where damages under 11 U.S.C. § 362(k) are at issue and the bankruptcy has been dismissed, the § 362(k) controversy generally survives. Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 364 n.2 (6th Cir. 1997).  See also Lawson v. Tilem (In re Lawson), 156 Bankr. 43, 45 (B.A.P. 9th Cir. 1993); In re Carraher, 971 F.2d 327, 328 (9th Cir. 1992); In re Morris, 950 F.2d 1531, 1534 (11th Cir. 1992); Price v. Rochford, 947 F.2d 829, 830-31 (7th Cir. 1991); In re Smith, 866 F.2d 576, 580 (3d Cir. 1989).  As Appellant points out, "[a] Court must have the power to compensate victims of violations of the automatic stay and punish the violators, even after the conclusion of the underlying bankruptcy case."  Johnson v. Smith (In re Johnson), 575 F.3d 1079, 1083 (10th Cir. 2009) (citing Davis v. Courington (In re Davis), 177 B.R. 907, 911 (B.A.P. 9th Cir. 1995)).  This Court finds this appeal is not moot and will decide it on the merits.

### C.  Standard of Review

In reviewing a determination of the bankruptcy court, the district courts "review the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof."  Reconstituted Comm. of Unsecured Creditors of the United Healthcare Sys., Inc. v. State of N.J. Dep't of Labor (In re United Healthcare Sys.),

396 F.3d 247, 249 (3d Cir. 2005) (quoting Interface Grp.-Nev. v.
TWA (In re TWA), 145 F.3d 124, 130-31 (3d Cir. 1998)).

**D.    Analysis**

The central question presented by this appeal is what path
this Court will take in the face of a split between the Circuit
Courts – and no Third Circuit case law explicitly deciding the
split – over the imposition of sanctions in cases of pre-
petition repossession of vehicles.   Surrounding this central
legal question are a number of other legal and factual arguments
specific to this case.   This Court will address each of
Appellant's arguments in the order presented.

Before addressing Appellant's arguments, some background on
the specific statutory provision at issue is instructive.   Once
a Chapter 13 petition is filed in a bankruptcy court, it
"operates as a stay, applicable to all entities."   11 U.S.C. §
362(a).   Of relevance, this automatic stay applies against "any
act . . . to exercise control over property of the estate."   11
U.S.C. § 362(a)(3).   This clause was only added to the
Bankruptcy Code in 1984.   See PL 98 Stat 353, July 10, 1984.

Subsection (k) provides the relevant rules for imposition
of penalties resulting from a violation of an automatic stay.
If the violation is "willful" then "actual damages, including
costs and attorneys' fees" must be awarded and punitive damages
may be awarded.   If the violation is "taken by the entity in the

good faith belief that subsection (h) applies to the debtor"
then recovery is limited to "actual damages."

The property that should be turned over from creditors to
the estate is delineated by 11 U.S.C. § 542. This part of the
Bankruptcy Code requires turnover of "property that the trustee
may use, sell, or lease." 11 U.S.C. § 542(a).

No party here disputes that (1) the Vehicle was property
Denby-Peterson could have used, (2) the Vehicle was eventually
turned over to Denby-Peterson, and (3) Nu2u did not violate the
Bankruptcy Court's Order requiring turnover of the Vehicle.
Instead, the parties dispute which rule governs return of a
vehicle repossessed pre-petition and not returned upon the
institution of an automatic stay.

a. The Bankruptcy Court's Adoption of the Minority
   Position

Appellant asserts there is a Circuit split on the issue
presented supra and that the Third Circuit has not decided which
position it will take. Appellant argues the Bankruptcy Court
chose the position of the minority and that the majority
position is more consonant with the intent and purpose of the
Bankruptcy Code. Appellees agree the Bankruptcy Court applied
the minority position. But, Appellees assert even if this
Circuit has not determined which side of the split it will
choose – if either - this District has consistently employed the

minority position. As a result, Appellees argue there is no legal error evidenced in the Bankruptcy Court's application of the minority rule.

The split has been ably described by the Bankruptcy Court and the parties. The majority position, which is followed in the Second, Seventh, Eighth, and Ninth Circuit Courts of Appeals advises that a creditor violates the automatic stay when it fails to affirmatively and immediately return qualifying property of the debtor that was seized pre-petition. Weber v. SEFCU (In re Weber), 719 F.3d 72 (2d Cir. 2013); Thompson v. Gen. Motors Acceptance Corp., LLC, 566 F.3d 699 (7th Cir. 2009); Cal. Emp't Dev. Dep't. v. Taxel (In re Del Mission), 98 F.3d 1147 (9th Cir. 1996); Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773 (8th Cir. 1989). These courts interpret the 1984 addition to the Bankruptcy Code to broaden the scope of the automatic stay to require affirmative action.

The minority position, on the other hand, has only been followed in the Tenth and District of Columbia Circuit Court of Appeals. This position finds no violation of the automatic stay as long as the creditor merely maintains the status quo in effect at the time of the automatic stay. WD Equip., LLC v. Cowen (In re Cowen), 849 F.3d 943 (10th Cir. 2017); United States v. Inslaw, Inc., 932 F.2d 1467 (D.C. Cir. 1991). The minority position interprets the 1984 addition to the Bankruptcy

Code to reach out to previously unaddressed actions to exercise control that do not result in actual possession.

This District, according to the Bankruptcy Court, has followed the minority position for the past twenty years.[3] Appellant argues in her brief that the Bankruptcy Court is incorrect, and that New Jersey courts "have uniformly followed the majority rule," citing In re Sussex SkyDive, LLC, No. 14-30236-ABA, 2016 Bankr. LEXIS 1862 (Bankr. D.N.J. Apr. 27, 2016) and In re Stamper, No. 03-49235, 2008 Bankr. LEXIS 733 (Bankr. D. N.J. Mar. 17, 2008). As the Bankruptcy Court explained in its Opinion, this characterization is incorrect.

Both In re Sussex SkyDive, LLC and In re Stamper involve wrongful post-petition action not maintenance of the status quo. In re Sussex SkyDive, LLC concerned a landlord who refused to allow debtor to retrieve an airplane. 2016 Bankr. LEXIS 1862, at *10-13. The landlord had no argument that it had any interest in the airplane at any point in time. Id. at *20. This is distinguishable from the instant case, where there appeared to be a genuine dispute over the interest held by the

---

[3] Unfortunately, neither the litigants nor the Bankruptcy Court was able to provide citation to case law evidencing this practice. This Court was able to find one case, Carr v. Sec. Sav. & Loan Ass'n, 130 B.R. 434, 435 (D.N.J. 1991), in which there was a factual citation to this practice. This provides some evidence for the practice and the rule in this District, which requires return of a vehicle pursuant to the automatic stay once proof of insurance is provided.

parties in the Vehicle. Regardless, considering that the bankruptcy judge in this matter wrote the opinion in the <u>In re Sussex SkyDive, LLC</u> matter there is no reason to doubt his interpretation of its meaning.

<u>In re Stamper</u> involved a settlement between a pro se debtor and a creditor after a Chapter 13 bankruptcy was instituted. 2008 Bankr. LEXIS 733, at *5. When newly-retained counsel discovered the settlement had been erroneously paid and demanded the creditor to refund the payment, the creditor refused. <u>Id.</u> at *6. While <u>In re Stamper</u> cites the majority rule, it does not apply it, as the case involved post-petition – not pre-petition – action violating the stay. <u>Id.</u> at *16-17.

Examining the law <u>de novo</u>, this Court finds the minority position more persuasive. First, the language used in 11 U.S.C. § 362 is prospective in nature. The relevant statutory provision states that it "operates as a stay" of "any act . . . <u>to</u> exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (emphasis added). As is clear from the statutory text, the <u>exercise</u> of control is not stayed, but the <u>act to</u> exercise control is stayed. Considering there is no case law cited before 1984 showing the other clause in this subsection – which is subject to the same prospective prefatory language – reaches pre-petition action, there is no reason to treat the added language any differently. <u>See</u> <u>Cohen v. De La Cruz</u> (<u>In re</u>

<u>Cohen</u>), 106 F.3d 52, 58 (3d Cir. 1997) ("[T]he Supreme Court has observed that a court should 'not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'" (quoting <u>Pa. Dep't of Pub.</u> <u>Welfare v. Davenport</u>, 495 U.S. 552, 563 (1990))).

Second, Congress is able to craft statutory text that imposes affirmative duties.  The examples of laws which do this are too numerous to count.  Yet, when Congress had the opportunity in 1984 to insert an affirmative turnover duty into § 362(a), it did not do so.  Congress could have stated under § 362(a) that creditors must turnover property in their possession upon institution of the automatic stay.[4]  Instead, it added language to broaden prohibitions on actions taken post-petition that do not reach the level of possession but still amount to an exercise of control.

Third, the majority rule's reading of broader protections into 11 U.S.C. § 362(a)(3), especially in the absence of clear statutory language or legislative history (of which there is none) reaches impermissibly beyond the text of the statute.  <u>In</u>

_____

[4] The citation by Appellant to 11 U.S.C. § 542 is unavailing. Just as Congress is able to draft language creating affirmative duties, it is also able to insert cross-citations.  It did not do that in § 362.  It would be unwise – not to mention unfair – to insert that cross-citation for Congress in the absence of clear evidence Congress intended to do so.  This Court will not take on the role of legislator here.

<u>re Cowen</u> presents a more faithful reading of the addition of the "control" clause into § 362(a)(3) which suffers none of the infirmities of the majority's position:

> "Since an act designed to change control of property could be tantamount to obtaining possession and have the same effect, it appears that § 362(a)(3) was merely tightened to obtain full protection." <u>In re Bernstein</u>, 252 B.R. 846, 848 (Bankr. D.D.C. 2000). "[U]se of the word 'control' in the 1984 amendment to § 362(a)(3) suggests that the drafters meant to distinguish the newly prohibited 'control' from the already-prohibited acts to obtain 'possession,' in order to reach nonpossessory conduct that would nonetheless interfere with the estate's authority over a particular property interest." Ralph Brubaker, *Turnover, Adequate Protection, and the Automatic Stay (Part II): Who is "Exercising Control" Over What?*, 33 No. 9 Bankruptcy Law Letter NL 1 (September 2013).
>
> It's not hard to come up with examples of such "acts" that "exercise control" over, but do not "obtain possession of," the estate's property, e.g., a creditor in possession who improperly sells property belonging to the estate.  Similarly, "intangible property rights that belong to the estate, such as contract rights or causes of action are incapable of real possession unless they are reified.  Yet, (a)(3) preserves and guards against interference with them by staying any act to exercise control over estate property." <u>In re Hall</u>, 502 B.R. 650, 665 (Bankr. D.D.C. 2014).  If Congress had meant to add an affirmative obligation — to the automatic stay provision no less, as opposed to the turnover provision — to turn over property belonging to the estate, it would have done so explicitly.  The majority rule finds no support in the text or its legislative history.

849 F.3d at 949-50.  This Court refuses to read the statute more broadly than its plan language permits.

Moreover, this reading of the language has been adopted in

both the District of New Jersey and the Eastern District of
Pennsylvania.  See Larami Ltd. v. Yes! Entm't Corp., 244 B.R.
56, 59 (D.N.J. 2000) ("In 1984, this section was amended to add
the language 'or exercise control over.'  The apparent purpose
of the amendment was to prevent industrious plaintiffs from
avoiding the prohibition on 'possessing' property by assuming
control over the property."); Amplifier Research Corp. v. Hart,
144 B.R. 693, 694 (E.D. Pa. 1992) ("Congress evidently believed
that the purpose of staying acts for possession was defeated if
plaintiffs were still free to try to control or otherwise direct
how the debtor used his property.").

Fourth, this rule provides adequate protections for both
debtors and creditors.  Appellant is correct: "[t]he primary
goal of reorganization bankruptcy is to group all of the
debtor's property together in his estate such that he may
rehabilitate his credit and pay off his debts . . . ."
Thompson, 566 F.3d at 702.  But, as the previous sentence
suggests, this is only the "primary" goal – not the only goal.
Bankruptcy also operates to ensure the debtor "pay[s] off his
debts."

The minority rule wisely balances both sides.  The minority
rule still prohibits creditors from taking post-petition action
that would give them possession or control over qualifying
property.  This ensures that the property will remain a part of

14

the estate and allows for a bankruptcy court to distribute those
assets to all claimants in an orderly and just manner.  It also
still allows damages for wrongful post-petition conduct.
Debtor's may still request a creditor to return property
repossessed pre-petition and may still move for a turnover of
the property before a bankruptcy court.  This allows a
bankruptcy court to fully consider a creditor's defenses to
turnover before a creditor has to turnover property to the
estate.[5]

Most importantly, as the Bankruptcy Court pointed out here,
an affirmative duty still exists in certain circumstances.  If
the creditor demands proof of insurance for a vehicle, naming it
as loss payee, and the debtor complies, the creditor will be in
violation of the automatic stay unless the vehicle is returned
to the debtor.  This protects both the interest of the debtor
and creditor, as it assures both that in case of accident,
insurance will cover the loss.[6]

---

[5] It is also important to note that if a creditor engages in
abusive litigation behavior to evade turnover, then a bankruptcy
court still has inherent power to hold the creditor in contempt
or impose sanctions.  See Theokary v. Shay (In re Theokary), 592
F. App'x 102, 106 (3d Cir. 2015) (stating it has long been held
that a court has "the ability to do whatever is reasonably
necessary to deter abuse of the judicial process."  (quoting
Eash v. Riggins Trucking Inc., 757 F.2d 557, 567 (3d Cir. 1985)
(en banc))).

[6] This Court will not separately address Appellant's policy
arguments, as it has done so here.  Those policies arguments do

Reviewing this legal issue de novo, this Court finds no reason to disturb the ruling of the Bankruptcy Court. This Court will apply the minority position. Specifically, in this case, the Court finds a creditor has not violated an automatic stay for retaining a vehicle lawfully seized pre-petition as long as the debtor has not produced an insurance policy denoting the creditor as the loss payee.

b. The Bankruptcy Court's Decision Finding No Violation of the Automatic Stay under the Minority Position

In the alternative, Appellant argues if the minority rule is applied to this case, then the Bankruptcy Court still committed error in its application of the rule to these facts. Appellant cites the case of In re Cowen, 849 F.3d 943 (10th Cir. 2017) asserting it is factually similar to this case thus compelling imposition of sanctions. Appellees disagree, arguing the facts allowing imposition of sanctions in In re Cowen differ significantly from the facts presented by the present case.

In re Cowen is a unique case with exceptional facts. The case involved two trucks owned by Jared Cowen. Id. at 945. After one truck broke down, Mr. Cowen borrowed money in exchange for a lien on the broken truck in order to repair it. Id. The other truck was also subject to a lien. Id. The truck broke

---

not persuade this Court to alter its decision that the minority rule should apply in this case.

16

down again and Mr. Cowen was unable to make his payments on either truck involved. _Id._ At least one of the trucks was repossessed under dubious circumstances. _Id._ Mr. Cowen filed a voluntary Chapter 13 petition and requested immediate return of both the trucks. _Id._ at 946.

The creditors in this action, Aaron Williams and his son-in-law Bert Dring, refused to return the trucks. _Id._ at 945. Mr. Cowen successfully moved the bankruptcy court to issue turnover orders against the creditors for both of the trucks. _Id._ at 946. Mr. Williams and Mr. Dring still refused to comply and were then made defendants in an adversary proceeding for violation of an automatic stay. _Id._ The defendants to the adversary proceeding asserted that they had terminated Mr. Cowen's rights in the trucks before the bankruptcy petition was ever filed. _Id._ The bankruptcy court found, explicitly, that the defendants "manufactured the paperwork . . . after the bankruptcy filing," "likely forged documents," likely "gave perjured testimony," and "coached their witnesses on what to testify to during [] breaks." _Id._

Appellees here are correct: _In re Cowen_ is distinguishable. Appellant argues that the basis for sanctions in _In re Cowen_ was the manufacture of documents, perjured testimony, and coaching of witnesses. Unlike the bankruptcy court in _In re Cowen_, the Bankruptcy Court here did not find that any of these acts

17

occurred – either pre- or post-petition.  On that basis alone, this case and In re Cowen are distinguishable.

Reviewing the record, this Court finds no clear error upon which it could overturn the Bankruptcy Court's factual findings. The Bankruptcy Court ably summed up the testimony presented to it: "the parties presented very different stories through unconvincing testimony of unbelievable witnesses, focusing on issues the court did not find relevant."  While witnesses may have been "unbelievable," this Court can find no clear evidence of the manufacture of documents, perjury, or the coaching of witnesses.  At worst, this Court's review of the testimony finds interested witnesses viewing their foggy memory through the lens of their present circumstance.  This is not In re Cowen.[7]  This Court, finding no clear error, will not disturb the Bankruptcy Court's findings on this matter.

    c. <u>The Bankruptcy Court's Finding that Denby-Peterson's True Interest in the Vehicle Was Unknown at the Date of Bankruptcy Filing</u>

Appellant also argues that the Bankruptcy Court's finding that the true interest in the Vehicle was unknown at the date of the bankruptcy filing was erroneous.  Appellant appears to present three arguments: (1) Appellees' litigation position was contradictory, which is evidence that it never truly believed

---

[7] The Court also notes that <u>In re Cowen</u>, coming out of the Tenth Circuit, is only controlling so far as it is persuasive.

Denby-Peterson voluntarily surrendered all right to the Vehicle; (2) Appellant claims it was clear as a matter of law that the Waiver Document was ineffective in surrendering Denby-Peterson's interest in the Vehicle; (3) even if there was a bona fide dispute, Appellees were still required to turnover over the Vehicle because of the automatic stay.

Appellees counter that the minority rule permits a creditor who has repossessed property pre-petition to retain that property until insurance is presented designating the creditor as loss payee.  Appellees also argue that the factual circumstances which became clear at trial were not clear at the time the proceeding commenced.  In other words, Appellant unfairly presents the facts in hindsight.

Appellant's first argument is unavailing.  Litigants commonly take contradictory positions in litigation.[8]  In fact, even the Federal Rules of Civil Procedure allow a plaintiff to plead in the alternative.  See FED. R. CIV. P. 8(d)(2).  This is not uncommon nor indicative of the Appellees' true belief.  It appears Appellees' counsel was merely attempting to protect his clients' interests by ensuring, no matter what the Bankruptcy Court may rule, his clients would be protected.

---

[8] In fact, even Appellant's argument suffers from this infirmity. On one hand, Appellant argues there was no bona fide dispute, while on the other, she argues – even if there was – turnover was required.

Appellant's second argument also misses the mark. Appellant is correct, as a matter of law, that the Waiver Document did not effectuate a surrender of the Vehicle by Denby-Peterson. No party disputes that holding. But, that does not mean that Appellant is entitled to damages under 11 U.S.C. § 362(k). Under the minority rule, these circumstances do not present a violation of the stay as Appellees merely maintained the status quo – regardless of whether their waiver argument was well or poorly reasoned.[9] If Appellant wanted sanctions, she could have appealed to the Bankruptcy Court's equitable powers for redress of this alleged litigation abuse. Those same sanctions do not arise under § 362(k).[10]

Appellant's third argument also does not persuade this Court that the Bankruptcy Court committed error. The cases Appellant cites refer to the scope of the automatic stay. Appellant is right: property only arguably a part of the estate is subject to the automatic stay. But, in light of this Court's

---

[9] Appellant does suffer from hindsight bias in this argument. Even determining whether there was an equitable interest in this case took an evidentiary hearing and multiple witnesses. The source: a lack of information flowing from client to counsel on both sides.

[10] Again, the Court notes here that Appellant could have avoided this conundrum entirely if Appellant would have produced to Appellees insurance designating them as the loss payee. She never did so. If she did, and Appellees still refused to return the Vehicle, Appellant may have had grounds for damages based on a willful violation of the automatic stay.

holding that the minority rule applies, Appellees conduct is not
sanctionable.

### d. The Bankruptcy Court's Finding that No Proof Was Offered at Trial that the Vehicle Was Insured[11]

Finally, Appellant contests the Bankruptcy Court's finding
that no evidence was offered at the plenary hearing to prove
Appellant's car was insured. Specifically, the Bankruptcy Court
found in its Opinion that "there was no proof at trial that
[Denby-Peterson] had any insurance at the time of filing . . .
."

This is a question of fact and this Court will not reverse
the Bankruptcy Court absent clear error. There was no clear
error here. To contest the Bankruptcy Court's finding,
Appellant offers one piece of her testimony stating her
"insurance was intact" at the time of the bankruptcy filing and
"the insurance company . . . sent [Nu2u and PVM] the information
from their own office via fax."

But, other evidence was elicited during cross-examination
bringing that statement into doubt. Even though Denby-Peterson

---

[11] Appellant argues in her reply brief that Appellees' argument
concerning insurance is a red herring. In short, Appellant
argues the Appellees would not have turned over the vehicle even
if they were presented with insurance. But, Appellees noted in
their first response that no insurance had been presented. This
should have spurred Appellant into action to provide proof.
Appellant did not respond to that argument and has given this
Court no citation to the record showing she ever provided
adequate, documentary proof.

claimed she had insurance at the time, she never produced a document showing the insurance. This in spite of the fact that it was specifically requested by Nu2u and PVM prior to trial.

Ultimately, when contradictory facts are presented to a factfinder, the factfinder must rely on his credibility determination of the witness. It is particularly appropriate to rely on the trial court's credibility determinations absent clear error. Here, it is undisputed that the Bankruptcy Court found Denby-Peterson's testimony on this point not credible. This finding, combined with the conflicting testimony and lack of documentation provides ample reasoning for the Bankruptcy Court's factual finding. Thus, there is no clear error. This Court will not disturb the Bankruptcy Court's finding.[12]

## CONCLUSION

This Court, having reviewed the briefs of both parties and the record presented, finds no legal or factual reason to disturb the ruling of the Bankruptcy Court. The Bankruptcy Court will be affirmed and this appeal will be dismissed.

An appropriate Order will be entered.

Date: November 1, 2018        s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.

---

[12] Even if this finding constituted clear error, it was harmless. There is no testimony on the record that the insurance named Nu2u as loss payee.